Okay. Faulk v. Dimerco Express USA. Ms. Pappy? Good morning. May it please the Court, Eileen Pabian alongside Cynthia Burnside from Holland & Knight and we represent the appellant Dimerco Express. We are not here to defend the conduct that's been alleged in this lawsuit. That's good. Racial discrimination is despicable, but what happened at this trial was a travesty of justice. Plaintiff's counsel engaged in intentional and harmful misconduct throughout the trial. We had an aggressive trial lawyer, aggressive but talented trial lawyer who pushed the envelope several times, but the district court seemed to have it well in hand to me. And tell me why the district court didn't adequately handle it. Well, there were several instances, as the court alluded to, that were very aggressive misconduct. And the first of which was the improper cross-examination of our key witness. This was Defendant's Exhibit 17, which is part of our supplemental record. This was a public record document showing Mr. Falk's felony aggravated assault charge that was critical to our defense. Ms. Song was to testify that this was the document that formed the basis for her decision to rescind the conditional job offer. And it was critical to our defense because it established that we had a legitimate nondiscriminatory reason for the revocation. But there's plenty of evidence that it wasn't the real reason. There is other evidence in the record that we acknowledge, but this was our most important critical piece of evidence. And what happened was that plaintiff's counsel was able to secure the exclusion of this document, albeit without a real legal basis. The court found that it had a lot of other stuff in it. That was his ruling, but he acknowledged it wasn't hearsay after that. And plaintiff's counsel, after obtaining the exclusion of that document, then capitalized on that exclusion. And when Ms. Song was testifying, when she started testifying on cross-examination, the plaintiff's counsel essentially said, through her questioning, was able to convince, was falsely misleading the jury to believe that there was no document. Well, again, I think as the Chief described, perhaps you had an opposing counsel who pushed the envelope. But where's the abuse of discretion in terms of the evidentiary ruling? Well, there's an abuse of discretion in terms of the conduct itself, where you show that the misconduct greatly impaired the jury's dispassionate consideration of the case. The court itself acknowledged that what plaintiff's counsel had done gave the jury a false belief that there was no documentation. Here's the problem. So, counsel objected to the question and stated before the jury that the arrest record did exist, right? You're talking about our counsel? Yes. And the district court says the only thing that's in evidence is the evidence. But the jury had heard Song's testimony, that she relied on false arrest for aggravated assault. So, that's evidence. And the district court's telling the jury to consider the evidence. Yes. He did say to consider the evidence, but the problem was, is that by virtue of her question and the message that it was giving to the jury, to everyone, was that this document actually didn't exist. So, what they were doing, what she did, was completely undermine her credibility and basically say, this is unbelievable. We knew, everyone knew this document existed. So, when plaintiff's counsel took advantage of that, took advantage of the exclusion and said it doesn't exist, this gave the jury the false belief that there was no documentation and she was basically making it up. This was her assertion. She's the branch manager. She's the one who gave, who extended the offer to Mr. Falk. And when she testified that this, that she was relying on this document to support her decision to rescind, this was the only thing that we had, essentially, other than testimony, her verbal testimony. This was the document that was going to support our position that our defense. I mean, the jury's not hearing that it doesn't exist. They're just not seeing the document. Isn't that right? And defense counsel is saying in front of the jury when the objection is made, that record was excluded because of an earlier ruling. No one's quarreling with that fact. And Song's already testified that she relied on the arrest record. That's come in as testimony the jury can consider. I'm having a hard time understanding how, in that context, the jury really believes that it didn't happen. Understood. Well, no, our position is that there was an abuse of discretion because the court allowed the plaintiff's counsel to basically get away with insinuating that and made that determination. The judge himself also pointed this out later, that she was taking advantage and was deceptive in terms of her undermining of the testimony. But I'll go on to the other instance, major instance of prejudicial misconduct, which was in the rebuttal closing arguments. We had the plaintiff's counsel who had been told during opening, you cannot make this argument about passing a torch. And then she then repeated the argument during express violation of the express order, repeated the argument, and told the jury that plaintiff had picked up the mantle and was passing it on to the jury to enter a verdict. This was, of course, an express violation of the court's order. And at that point, the court was, after that remark was made, the court was enraged by what counsel had done. But inexplicably, well, based on his determination, refused to give a curative instruction. And we asked for it multiple times. In this court, it is an abuse of discretion to refuse to give a curative instruction that is requested. I thought that immediately when this happens, the district court corrects it in front of the jury, right? The only thing the court said is I'm going to strike that comment. That is not – That clearly sends the message to the jury that's not proper and you're not to consider it, right? Well, what had happened was simply by saying this is an improper comment does not mean – the jury should have been told you are not on plaintiff's team. The fact was – I mean the jury had understood in the opening when counsel said what she said about passing the torch. The district court on its own, right, says that's not appropriate argument. Correct. And then it sustains the objection during closing argument, right? But what happened – in this court, in this circuit, when you have general instructions, something along those lines, that is not sufficient. There has to be a timely, specific curative given, an actual curative telling the jury. The judge was incensed at the time that this happened, spent a long time going – you know, basically he was apoplectic. This is improper. You are asking the jury to step out of its impartial role and it was intentional. So the court said – and the court recognized himself. All right. So when the court says that's struck from the record, the jury has to understand that that's not something they can consider, right? Well, you know, we would have – it would have been much more effective for the court to have said to the jury beyond just I'm striking the comment, that this is improper. Because this was – there were many, many things that had happened throughout the trial. The judge himself – Well, isn't your best argument of substantial prejudice the cumulative effect of all the things the plaintiff slurred in? Yes. I mean this was just two of the, in our opinion, the most egregious. There were other – there was coaching of the plaintiff. There was, you know, objections that – you know, speaking objections. There was all types of things that went on. And the judge himself – Of course, the problem with the coaching and the linking and whatever, no objection. There were – we discussed it with the – the trial counsel discussed it with the judge. But the judge himself said it best. I mean, I don't see – there's not an objection in the record, is there? Objection – there were objections, but maybe not to those specific things. Okay. But the judge himself said it best, and I'd like to just read it to you. He said, if I can't place limitation on what people say and expect them to abide by those, it's my role – my role is to make decisions. There's no use in having a judge. He said, what you did – and he was reflecting on all the misconduct that had occurred. What you did was very, very clear example of inappropriate conduct in front of a jury. Okay. I have a quick question before you totally run out of time.  And this has to do with the other convictions that you wanted to introduce. Yes. My understanding is the denial or decision was – had to do with undue prejudice. Is that right? That is correct. And why is that – why was that not a correct conclusion on the court's part, given the severity of the evidence you tried to introduce? Well, what the court did was the court employed 403, which we all know is an extraordinary remedy that's supposed to be used sparingly. And the court initially – But also one that we review for abuse of discretion.  Exactly. But our position is it was an abuse of discretion because the court relied on it as a rule of admissibility, exclusion instead of admissibility. And the rule is supposed to be used only in circumstances where the prejudice is – where the probative value is substantially outweighed by the prejudice. The court itself recognized pretrial that this evidence of the other – the 2019 arrest had strong probative value because it was another stressor that was coexisting at the exact same time when the plaintiff had heard from the HR manager. So it was – we should have been entitled to introduce that evidence to show that there was another coexisting cause of his emotional harm. The court employed 403 at trial after saying multiple times pretrial that he was allowing it in. He even wanted to include – even go and allow us to include the nature of the charges. But when the discussion took place at trial, we actually offered when the judge flip-flopped and decided he wasn't going to admit it, we actually offered to introduce a sanitized version. So we can discuss that more on rebuttal. Thank you for answering the question. Thank you. Mr. Mayda. Good morning, Your Honors, and may it please the court. I'm Aaron Madoff. I'm here for Kenny Falk. You have covered a lot in counsel's argument. I will add just a very few items to it. With respect to the question of Suki Song and the document, there was a curative instruction. It was pretty long. I was looking for it there, but he did say to the jury, you are not to take summary of the evidence from counsel. That was at the end of that piece. Your Honor spoke to the court where he said the evidence is the evidence. But at the end of that, he says you're not to take summary from counsel. This case is an abuse of discretion case. This is a judge who certainly was not shy about making his comments about what he felt was inappropriate and inappropriate in front of the jury. In fact, I believe that counsel just said that the judge was incensed. And from my read of the transcript, he was. And the jury would have seen and heard that. The judge has to make the determination during the trial. Are you saying perhaps that that could have worked the other way, that seeing the judge's behavior or sentiment towards counsel actually could have tried to prejudice the jury in some way? I mean, the plaintiff's attorney isn't looking that great at this point when you're being chastised or admonished by the court. I am not defending our conduct, Your Honor. What I'm saying is that no attorney wants to have an objection sustained. When a judge does that, it has an effect. Now, the judge could, in many cases, when they do, they'll say to the jury, please don't take my sustaining a ruling on objection as to anything related to the evidence. My point is that when that happens, it does have an effect. And so the judge is making a decision. The judge is paying attention and saying— But your trial counsel didn't seem to care whether she did things that caused objections to be sustained. She did it over and over and over again. I've never seen a—I defer to them. They read more transcripts than I do. I usually create them. But I was just shocked when I read that transcript, all the going back and forth that plaintiff's counsel caused. And I don't know how it didn't cause substantial prejudice to the defense. Your Honor, that is an abuse of discretion for the trial judge to decide. The trial judge decided to give curative instructions where he felt it was appropriate, and he made the decision not to give curative instructions where he felt it was appropriate. Well, he also didn't seem to understand what cumulative effect meant. Because he said, okay, this wasn't bad, this wasn't bad, this wasn't bad, so it can't be cumulative bad. And that doesn't make sense to me anyway. The cumulative effect, you've got to put pieces together. What have we got? We have a comment in opening and a comment in closing about torch-carrying. Well, we have things where she's standing where defense counsel can't see her. When we talk about— Making faces and doing things that he can't object because he doesn't know what's going on. That's what the judge—I mean, I didn't make that up. That's in the transcript. And if you were the district judge in that case, you would make an instruction. You would say, I am looking at this situation, and I see a problem, and I'm going to give an instruction. I wasn't there. I stand in the shoes of my trial counsel. But the district judge was there. The district judge did watch the effect on the jury. And I think what's important here is that Mr. Weeks in the second case talked about the Seventh Amendment's importance, and we want to have it with the jury. And it's up to the trial judge to make a determination, what's the impact on the jury? If Judge Brown wanted to sanction counsel, he could have done that. He would have done that outside the presence of the jury because that's not the relevant question. The relevant question that Judge Brown needs to make a decision on is what was the impact on the jury. And Judge Brown, watching that jury, listening to the evidence, you're looking at a trial transcript. He was there. He looked at what was there. He made his decisions. This is why we have an abuse of discretion standard. If we are going to overlook, look at a transcript and go through every trial and— Yeah, it seems to me your best argument, counsel, is, look, there were errors. I mean, not errors. There was misconduct. But the district court remedied it quickly, instructed the jury properly. And we presume in this circuit that juries follow instructions from the district court. And to me, that's your best argument. That's not only my best argument. That's the argument I'm making, Your Honor. He's watching it. He's giving the curative instruction when he feels it's appropriate. He's frustrated about it, frustrated in a way that the jury also sees. But he's telling the jury that this is improper. He's striking things from the record. And there's really nothing, it seems to me, in this record that suggests the jury wouldn't follow his instructions. I agree. I would go further. I am not standing here defending the conduct. What I am defending is the district judge's discretion in making his decisions as to what is affecting the jury. And that, I think, is what's critical. Your Honor, if you have no further questions on this, I would like to briefly go through the other issues to see if there are any questions because— I don't know that there are going to be any, but that's your choice. Well then, in that case, you have had a very long week. I heard that from the beginning. I would like to go to a couple of— If you go on to address issues that were not addressed in opening, you give your opponent an opportunity to address them in rebuttal with no chance to respond. If, on the other hand, they were never addressed in opening or in your rebuttal, then we're not going to hear a reply about it. Very good. Then I will simply go to my closing comments, Your Honor, because I want to just make two very large points here. You have a record before you from an unusually diligent judge. He considered every issue. He gave curative instructions. He did the balancing under 403 and gave you a tremendous record under his analysis under Barber as to why he kept things out. I would add that to say that a rape charge is not inflammatory, the jury would have hated Mr. Falk. I do think that that was a correct ruling. And he actually sat there and gave the statement as to how this affected Kenny Falk. He laid that out to the point where he couldn't find the words. He couldn't find the words to describe it. How many days was this trial? I believe the trial was four days, Your Honor. The second thing I want to add is that this is a case with extraordinary facts. The testimony that came in was literally a statement of the fact that they have a system of discriminating. Your friend on the other side started off by saying she was not here to defend that, right? And there's another reason that she can't. There's even an email that was sent from Ms. Chau that said you're going to get a very large verdict. They knew that this verdict was coming before the case was filed. Your Honor, we ask that you affirm it in every respect. Okay. I think we understand your argument, Mr. Pabian. Mr. Madoff, excuse me, Ms. Pabian, you've saved some time for rebuttal. Yes. The first point I would like to make is that the admonishments that counsel was referring to, these were not done in front of the jury. These were done outside the presence of the jury. So in the jury's eyes, everything that— And there was some—the district court said things in front of the jury, did it not, about the impropriety of counsel's conduct. There were very, very few things that were said in front of the jury. Ninety-nine percent of the things that were said about counsel were done outside the presence of the jury. So in the jury's eyes, everything that she did was all right. I'm going to turn to the—going back to the exclusion of the arrest. And what I was saying earlier is that the court utilized Rule 403 inappropriately, relied on the Barber decision, which was a Seventh Circuit case involving completely different facts. In that case, it was a subsequent conviction five years later, not contemporaneous like we have here. In that case, there was a very tenuous connection, as the court found, between the conviction there and the actual claimed harm. Here, there was—this arrest had happened, and the charges were pending at the exact same time. This was a serious— Why is it—I mean, okay, so the court found that the prejudice outweighed the probative value, and how is that wrong? Was it improper to believe that the jury would be more focused on the charge as opposed to the emotional impact of the charge? Well, that is why we offered to just say that he had been arrested, not focus on the charge, because the judge did express concern about that. So we offered to introduce evidence only of the fact that he had been arrested, so was suffering a contemporaneous—had a contemporaneous stressor. That was why the—what we submitted that the prejudice was not—was not, you know, did not outweigh the harm. We offered to reduce the prejudice by doing that and offering the sanitized version of the evidence. So the court's reliance on that case was completely inappropriate. The law in this circuit says that parties are entitled to explore all factual elements surrounding damages. We have the Bryan case, where the court reversed for a new trial, where there was an improper exclusion like this of an incarceration, and—because it went to his emotional suffering. So the court just was very hyper-focused on that Barber case because plaintiff's counsel had introduced—had presented that, and even before trial, like I said, had said that that didn't apply. But yet, during trial, changed his mind, and we submit that it was an abuse of discretion. He improperly applied Rule 403, and that was harmful error. It did cause substantial prejudice because, surely, if the jury had heard that he was suffering some other cause of harm, that could have—likely would have influenced the amount of emotional distress damages that were attributed to DeMurko versus some other arguably much more stressful stress thing that he was facing at that exact same time. So—and then going to Judge Conway's point, there was substantial prejudice here. As you said, this was a—the amount of errors that occurred in terms of the type of incendiary-type remarks that were made, this was from start to finish. It was an opening. It continued through with the cross-examination. She knew that this document existed, but then insinuated right in front of the jury that it didn't, and that, therefore, as the court itself recognized, completely undermined the credibility of our witness, and then right through in rebuttal, right moments before the jury was about to deliberate, she delivers the message again, you are on plaintiff's team. The plaintiff is handing the mantle to you to enter a verdict in this case. There was—it was strategic, and as—also, as Judge Conway said, there was certainly—if the court doesn't find that any of these—individually, these errors compromised the trial, certainly the combination of them undermined the fairness. This was not a fundamentally—this was an unfair trial, and the combined impacts of all of these different errors entitle us to a new trial, or at least a reduction of the awards that were given. Okay. Ms. Pabian, I think we understand your case. Thank you. We're going to move to our last. Thank you. Okay.